United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

WESTERN CONFERENCE OF TEAMSTERS PENSION PLAN,

Plaintiff,

v.

DIANA LEE JENNINGS, et al.,

Defendants.
_____________________________________/

No. C-10-03629 EDL

**REPORT AND RECOMMENDATION RE: PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

This interpleader action stems from a dispute over the entitlement to pension benefits following the death of Kenneth Hironaka, a participant in the Western Conference of Teamsters Pension Plan. Defendant Diana Jennings and Defendant Minnie Hironaka have claimed entitlement to the benefits, each claiming that she is Mr. Hironaka's surviving spouse. Default has been entered against Ms. Jennings. Plaintiffs move for entry of default judgment against Ms. Jennings, and for judgment in favor of Ms. Hironaka, who has participated in this case. Specifically, Plaintiffs seek the following orders: (1) that Ms. Hironaka is the spouse of Plan participant Kenneth Hironaka as of the date of his death; (2) that Ms. Hironaka is entitled to an After Retirement Spouse Lifetime Pension; (3) that Plaintiffs shall pay the Spouse Pension to Ms. Hironaka; (4) that Plaintiffs are discharged from all liability to Ms. Jennings for the Spouse Pension or any benefits payable as a result of Participant's participation in the Plan; (5) that Ms. Jennings shall be restrained from commencing action in any court against Plaintiffs relating to the Spouse Pension or any benefits payable as a result of Participant's participation in the Plan; and (6) that Plaintiffs are entitled to fees and costs in the amount of $15,961.99. No opposition to Plaintiffs' Motion for Default Judgment was filed.

Because this matter is appropriate for decision without oral argument, the Court vacated the

United States District Court
For the Northern District of California

May 24, 2011 hearing on Plaintiffs' Motion for Default Judgment. Although Plaintiffs and Ms. Hironaka have consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c), Ms. Jennings is in default and has not consented. Therefore, the Court will reassign this matter to a district court judge with the following Report and Recommendation.

**Background**

Participant Kenneth Hironaka was a vested participant under the Western Conference of Teamsters Pension Plan. Compl. ¶ 8. He retired effective July 1, 1993 and began to receive benefits from the Plan in the form of a joint and survivor annuity - the Employee and Spouse Pension with Age 62 Benefit Adjustment Option. Compl. ¶ 8. Under Article 11.4 of the Plan document, the person who qualified as the Participant's Spouse under the terms of the Plan, if living at the time of his death, was eligible to receive an After Retirement Spouse Lifetime Pension that is payable monthly for her lifetime. Compl. ¶ 9. Kenneth Hironaka died on August 16, 2008. Compl. ¶ 10.

Upon the Participant's death, a Spouse Pension of approximately $144 per month became payable to the Participant's Spouse. Compl. ¶ 11. After the Participant died, both Ms. Hironaka and Ms. Jennings contacted the Trust and claimed to be the Participant's spouse. Compl. ¶ 12. Both applied for the Spouse Pension. Compl. ¶ 12.

Ms. Jennings submitted information to the Plan in order to show that she and the Participant were married in Oakland, California on August 6, 1955. Compl. ¶ 13. According to Ms. Jennings, she separated from Participant on August 15, 1965, but that they were never divorced. Compl. ¶ 13. The Plan's research found records showing that Ms. Jennings filed for divorce around August 16, 1965, but that no divorce decree was ever finally obtained. Compl. ¶ 14. Ms. Jennings also submitted a copy of her marriage licence, and a copy of a letter she received from the Social Security Administration stating that her monthly Social Security benefit was increased effective August 2008 because of the death of her spouse. Compl. ¶ 15.

When Participant applied for retirement on April 25, 1993, he provided the Plan with a copy of a marriage certificate showing that he married Ms. Hironaka in Nevada on May 28, 1969. Compl. ¶ 16. In his application for retirement benefits, the Participant named Ms. Hironaka as his spouse and designated her as the beneficiary of any death benefits that might become payable as a result of

his death. Compl. ¶ 16.

Under Article 10.11 of the Plan document, a Plan Member's Spouse is the person to whom the Plan Member is married on the first day of the first month for which a monthly retirement benefit is payable. Compl. ¶ 17. Article 17.7 of the Plan provides that the Trustees of the Trust may recognize as a marriage either a valid legal marriage or a "deemed valid marriage." Compl. ¶ 18. Under the Plan, the Trustees may recognize a deemed valid marriage by the standards used by the federal Social Security Administration in determining what constitutes a deemed valid marriage, and whether a deemed valid marriage exists on the date in question. Compl. ¶ 18. The Trustees will not recognize a person as the Spouse of a Plan Member based on a deemed valid marriage unless the person was living with the Plan Member in the same household on the Plan Member's Pension Effective Date (the first day of the first month in which his monthly retirement benefit is payable), and the Trustees have not determined prior to the end of the Plan Members' election period that another person qualifies as the Plan Member's Spouse on the basis of a valid legal marriage. Compl. ¶ 18.

The Trustees were unable to determine who was the Participant's spouse and were unable to determine the recipient of the Spouse Pension. Compl. ¶ 19. On January 11, 2010, Plaintiffs' counsel sent a letter to each Defendant informing them that the Trustees could not determine the status of each Defendant and informing them that Plaintiffs intended to bring an interpleader action. Compl. ¶ 20. Defendants were unable to resolve their disputed claims to the Spouse Pension. Compl. ¶ 21. Plaintiffs filed this action on August 17, 2010.

**Discussion**

**A. Default judgment is appropriate**

A court may not enter a default judgment against an unrepresented minor, an incompetent person, or a person in military service. See Fed. R. Civ. P. 55(b)(2); 50 App. U.S.C. § 521(b)(1). Here, Defendants are not minors, and it appears that they are not incompetent or in the military.

Under Federal Rule of Civil Procedure 55(b)(2), the court may enter a default judgment where the clerk, under Rule 55(a), has already entered the party's default based upon a failure to plead or otherwise defend the action. A district court is free to consider a wide range of factors in

deciding whether to enter a default judgment, including: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir.1986); see also Wright & Miller, Federal Practice and Procedure, Civil § 2685.

Here, the Eitel factors weigh in favor of entry of default judgment. First, Plaintiffs and Ms. Hironaka would suffer prejudice if the Court does not enter default judgment. The dispute concerns Defendants' competing claims to the interpleaded funds. Without entry of default judgment, the competing stakeholders' claims can not be finally resolved. See Sun Life Assurance Co. of Canada v. Kimble, 2007 WL 3313448, at *2 (E.D. Cal. Nov. 6, 2007); see also Aetna Life Ins. Co. v. Bayona, 223 F.3d 1030, 1034 (9th Cir. 2000) ("Interpleader's primary purpose is not to compensate, but rather to protect stakeholders from multiple liability as well as from the expense of multiple litigation.").

The second and third factors also weigh in favor of default judgment. The general rule is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true. Televideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-918 (9th Cir. 1987) (per curiam) (citing Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977). Here, the facts as pleaded by Plaintiffs reveal competing claims to the funds and must be taken as true. Further, Ms. Jennings has failed to pursue her claim.

The fourth factor, the sum of money at stake, is neutral. The primary purpose of this case is to determine the entitlement to approximately $144 per month for the lifetime of the beneficiary (in addition to the amount currently due of $4,608.00). The amount of the Spouse Pension is actuarially calculated based on the age of one individual, so resolution of this action by default judgment against Ms. Jennings permits the Plan to calculate the Spouse Pension according to Ms. Hironaka's age. Compl. ¶ 11.

The fifth factor weighs in favor of default judgment. Because Ms. Jennings did not file an answer to the complaint, there is nothing to suggest that there is a possibility of a dispute concerning

material facts.

The sixth factor regarding whether the failure to participate could be the result of excusable neglect weighs in favor of default judgment because Ms. Jennings failed to appear despite Plaintiffs' counsel's extensive efforts to obtain her appearance and participation in this case. Specifically, Plaintiffs served Ms. Jennings with the Summons, Complaint, Certificate of Interested Entities or Persons, and ADR Scheduling Order on August 25, 2010 by personal delivery. Schuller Decl. ¶ 4. Ms. Jennings had until September 15, 2010 to respond to the Complaint, which she did not do then or since. Id. ¶ 5. On November 9, 2010, Plaintiffs' counsel spoke with Ms. Jennings' daughter to discuss the possibility of engaging in ADR to resolve the dispute. Id. ¶ 6. On that day, counsel sent Ms. Jennings a draft stipulation and proposed order selecting ADR process and a booklet explaining the Court's ADR process. Id. ¶ 6. On November 15, 2010, Plaintiffs' counsel spoke to Ms. Jennings by phone to confirm whether she received the ADR materials. Id. ¶ 7. Ms. Jennings stated that she had not yet received it. Id. ¶ 7. On November 18, November 23, and December 3, 2010, Plaintiffs' counsel attempted to reach Ms. Jennings by phone regarding the ADR materials, but did not reach her. Id. ¶ 8. By letter dated December 3, 2010, Plaintiffs' counsel provided Ms. Jennings with a draft of the Joint Case Management Conference statement for her review and comment before the December 7, 2010 filing date, and informed her of the upcoming December 17, 2010 Case Management Conference. Id. ¶ 9. On December 7, 2010, counsel spoke to Ms. Jennings by phone. Id. ¶ 10. During that call, Ms. Jennings stated that she had received the ADR materials and joint Case Management Conference statement but that she was unable to meet and confer or review the draft joint Case Management Conference statement. Id. ¶ 10. On December 8, 2010, counsel reminded Ms. Jennings by phone of the December 17, 2010 Case Management Conference. Id. ¶ 11. Ms. Jennings did not appear at the CMC. Id. ¶ 11. By letter dated January 3, 2011, counsel informed Ms. Jennings of Plaintiffs' intent to file for entry of default by January 26, 2011, if Ms. Jennings did not make a formal appearance in this case. Id. ¶ 12. Counsel also informed Ms. Jennings of the January 25, 2011 ADR phone conference and the February 8, 2011 Case Management Conference, and requested her appearance at those conferences. Id. ¶ 12. Counsel also provided Ms. Jennings with the Court's Handbook for Litigants with a Lawyer. Id. ¶ 12. Ms.

United States District Court
For the Northern District of California

Jennings did not respond. Id. ¶ 12. On January 20, 2011, counsel left a message for Ms. Jennings reminding her of the ADR phone conference. Id. ¶ 13. Ms. Jennings did not appear at the ADR phone conference or the Case Management Conference. Id. ¶ 13.

Finally, the seventh factor, the strong policy favoring judgment on the merits, would tend to weigh against entry of default judgment, but here, because Ms. Jennings has failed to answer the interpleader complaint, resolution of this matter on its merits is impractical. Even if this factor weighs against default judgment, on balance, given the other factors, default judgment is appropriate.

**B. Distribution of the interpleaded funds**

Due to entry of default judgment against Ms. Jennings, Ms. Hironaka is entitled to the interpleaded funds. See Trustees of the IL WU-PMA Pension Plan v. Emelda Peters, 660 F. Supp. 2d 1118 (N.D. Cal. 2009) (holding that default judgment was proper against two non-appearing defendants where the court had already determined on summary judgment that one of the remaining two defendants had established her entitlement to the funds); Sun Life Assuarance Co. of Canada v. Kimble, 2007 WL 3313348 at *2-3 (E.D. Cal. Nov. 6, 2007) (holding that default judgment was proper against a defaulting defendant and that the moving defendant had established his entitlement to the funds though a concurrent motion for judgment on the pleadings); see also Nationwide Mutual Fire Ins Co. v. Eason, 736 F.2d 130, 133 n.6 (4th Cir. 1984) ("Clearly, if all but one named interpleader defendant defaulted, the remaining defendant would be entitled to the fund.") (citing New York Life Insurance Co. v. Connecticut Development Authority, 700 F.2d 91, 95 (2d Cir.1983) (defaults of interpleader defendants "did not make the interpleader action inappropriate but merely expedited its conclusion by obviating the normal second stage," in which adverse claimants' rights to the fund are settled)). Upon entry of default judgment against Ms. Jennings, Ms. Hironaka is the only remaining claimant to the interpleaded funds. Moreover, Mr. Hironaka identified Ms. Hironaka as his spouse in his application for retirement benefits, indicating that there was either a valid legal marriage or a deemed valid marriage under the Plan. Therefore, Ms. Hironaka is entitled to the interpleaded funds and the Spouse Pension.

**C. Other equitable relief**

Plaintiffs also seek orders: (1) discharging Plaintiffs from all liability to Ms. Jennings for the Spouse Pension or any benefits payable as a result of Participant's participation in the Plan; and (2) restraining Ms. Jennings from commencing action in any court against Plaintiffs relating to the Spouse Pension or any claims arising from Participant's participation in the Plan. "Interpleader is a valuable procedural device for ERISA plans who are confronted with conflicting multiple claims upon the proceeds of an individual's benefit plan. A plan in this position risks defending against multiple lawsuits brought by the adverse claimants. Interpleader provides a way out of this quandary, allowing the plan to petition the court to sort out the conflicting claims." Trustees of the Directors Guild of America-Producer Pension Benefits Plan v. Tise, 234 F.3d 415, 426 (9th Cir. 2000) (citing Aetna Life Ins. Co. v. Bayona, 223 F.3d 1030 (9th Cir.2000)). There are two steps to an interpleader action:

> Normally an interpleader action is concluded in two stages, the first determining that the requirements of § 1335 are met and relieving the plaintiff stakeholder from liability, and the second adjudicating the adverse claims of the defendant claimants; this bifurcation is not mandatory, however, and the entire action may be disposed of at one time.

New York Life Ins., 700 F.2d at 95 (citing 3A J. Moore & J. Lucas, Moore's Federal Practice ¶¶ 22.14[1], [2] (2d ed. 1982)). "The primary test for determining the propriety of interpleading the adverse claimants and discharging the stakeholder (the so-called 'first stage' of interpleader) is whether the stakeholder legitimately fears multiple vexation directed against a single fund." Big Island Yacht Sales v. Dowty, 848 F. Supp. 131, 133 (D. Haw 1993) (quoting 7 Charles Alan Wright, et al., Federal Practice and Procedure § 1704 (1986)). Discharge is normally granted absent bad faith by the stakeholder. See New York Life Ins., 700 F.2d at 96.

Here, Plaintiffs were faced with the prospect of multiple, competing claims upon the same benefit. Thus, interpleader was the proper mechanism for resolving the competing claims, and Plaintiffs should be discharged from all liability to Ms. Jennings regarding her benefits.

Further, Plaintiffs are entitled to an order enjoining Ms. Jennings from bringing any future claims against them relating to the Spouse Pension. Trustees of the IL WU-PMA Pension Plan, 660 F. Supp. 2d at 1144-45 ("Here, the Court has adjudicated the question who is entitled to William's pension benefits and found that Dorothy is entitled to the full amount of those benefits. Relitigation

of that question would be judicially wasteful and raise the possibility of inconsistent results. It would also defeat the purpose of the Trustee's interpleader action. Therefore, the Court concludes that an injunction should be entered prohibiting Rose and Joyce from initiating any action, whether in state or federal court, asserting an entitlement to William's survivor pension benefits."); see also 28 U.S.C. § 2361 ("In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court. Such process and order shall be returnable at such time as the court or judge thereof directs, and shall be addressed to and served by the United States marshals for the respective districts where the claimants reside or may be found. Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment.").

Here, Plaintiffs have acknowledged that they owe the pension benefits to either Ms. Jennings or Ms. Hironaka, and they gave the claimants ample opportunity to resolve the competing claims out of court prior to the filing of an interpleader action. An injunction is necessary to avoid repetitive litigation against Plaintiffs, who are disinterested shareholders. Further, relitigation of the entitlement to the funds would defeat the purpose of an interpleader action. Therefore, Plaintiffs are entitled to injunctive relief against Ms. Jennings prohibiting her from bringing any claims against Plaintiffs regarding the Spouse Pension.

**D. Attorney's fees**

"[C]ourts have discretion to award attorney fees to a disinterested stakeholder in an interpleader action." Abex Corp. v. Ski's Enterprises, Inc., 748 F.2d 513, 516 (9th Cir.1984). "[T]he proper rule ... in an action in the nature of interpleader, is that the plaintiff should be awarded attorney fees for the services of his attorneys in interpleading." Schirmer Stevedoring Co., Ltd. v. Seaboard Stevedoring Corp., 306 F.2d 188, 194 (9th Cir.1962). "The court has discretion to award attorney's fees and costs: (1) against the losing claimants as costs to such claimants, (2) from the fund payable to the winning claimants, or (3) by dividing the fees among the claimants." Nestle

**United States District Court**
For the Northern District of California

Beverage Co. v. Bayerische Vereinsbank S.A ., 1993 WL 96584 at *3 (N.D. Cal. Mar 24, 1993) (Patel, J) (citing Schirmer, 306 F.2d at 195).

As a general matter, a court will award fees from the proceeds where "(1) the party seeking fees is a disinterested stakeholder, (2) who had conceded liability, (3) has deposited the disputed funds into court, and (4) has sought a discharge from liability." Septembertide Publ'g v. Stein & Day, Inc., 884 F.2d 675, 683 (2d Cir.1989). Several considerations justify awarding the plaintiff attorney's fees from the interpleader fund:

> It is thought appropriate to award counsel fees to [a disinterested] stakeholder because the retention of counsel has in all likelihood been necessitated not because of the stakeholder's wrongdoing but rather because he is the mutual target in a dispute which is not of his own making. Moreover, the stakeholder is often viewed as having performed a service to the claimants by initiating a proceeding which will expeditiously resolve their claim and by safeguarding the disputed fund by deposit in court, which at the same time guarantees the prevailing claimant immediate satisfaction without the need for execution proceedings.

3A Moore's Federal Practice, at 22-171, 22-173.

Plaintiffs have met all of the criteria for awarding attorneys' fees and costs from the Plan proceeds. Plaintiffs are requesting approximately $15,135.00 in fees and $826.99 in costs from August 2010 to the present. The work performed by counsel included: (1) contacting Defendants via letters and telephone calls; (2) preparing and filing the initial complaint and other case-initiating documents; (3) preparing the Case Management Conference statement and attending the Case Management Conference; (4) preparing the Request for Entry of Default; and (5) preparing the motion for default judgment. Schuller Decl. ¶ 20. The costs associated with this case were: (1) filing fees; (2) service of process; (3) copying costs; and (4) mailing costs. Id. ¶ 21. Plaintiffs state that the fees and costs were somewhat increased because Defendants were not represented and did not have computer access. Id. ¶ 22.

The traditional test for determining attorneys fees in an interpleader action is less rigorous than the more elaborate factors used to consider fee awards in other contexts. Powell Valley Bankshares, Inc. v. Wynn, 2002 WL 728348 at *2 (W.D. Va. Apr 11, 2002) (citing Noeller v. Metro. Life Ins. Co., 190 F.R.D. 202, 207 (E.D.Tex.1999). Courts have broad discretion not only with respect to whether to allow attorney's fees to be deducted, but also with respect to the amount of

United States District Court
For the Northern District of California

fees to which an interpleader plaintiff is entitled. Trustees of Directors Guild of America Producer Pension Benefits Plans v. Tise, 234 F.3d 415, 426 (9th Cir.2000). "In an interpleader action, the broad rule is reasonableness." Id.

Here, the time spent and hourly rates charged for counsel are reasonable. See Devlin Decl. ¶¶ 5, 6 (attesting to reasonableness of the hourly rates). Further, the costs are reasonable. Therefore, the Court should award Plaintiffs their fees and costs from the Spouse Pension.

**Conclusion**

The Court recommends granting Plaintiffs' Motion for Default Judgment against Ms. Jennings and issuing the following Orders:

1. Defendant Hironaka is the spouse of Kenneth Hironaka as of the date of his death;
2. Defendant Hironaka is entitled to the After Retirement Spouse Lifetime Pension and that directs the Western Conference of Teamsters Trust Fund to pay the Spouse Pension to Defendant Hironaka;
3. Plaintiffs are discharged from all liability to Defendant Jennings for the Spouse Pension or any benefits payable as a result of Participant's participation in the Western Conference of Teamsters Pension Plan;
4. Defendant Jennings is restrained from commencing action in any court against the Plaintiffs relating to the Spouse Pension or any benefits payable as a result of Participant's participation in the Plan; and
5. Plaintiffs are awarded $15,961.99 representing the Plaintiffs' attorney's fees and costs.

Any party may serve and file specific written objections to this recommendation within fourteen (14) days after being served with a copy. See 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); Civil Local Rule 72-3. Failure to file objections within the specified time may waive the right to appeal the District Court's order.

Dated: June 3, , 2011

ELIZABETH D. LAPORTE
United States Magistrate Judge